Hall, Judge.
 

 — The Plaintiff does not call upon the Court f< t- its assistance to supply any defect, or rectify a mistake in the voluntary deed of gift, which is the subject of the pieseut dispute, but to restore him to the evidence of a legal title — the deed of gift of which he lias been deprived (as is admitted in the answer) by the Defendant’s own conduct.
 

 It appears, that the Defendant was an old man, ami that his mind laboured under the infirmities incident to old age. But none of the numerous witnesses examined in the case, say, that he was incapable of transacting his business, or of making a contract.
 

 I< is oleas-, that the deed of gift was not executed with precipitancy, but with some deliberation.
 
 Jlrihur Jones
 
 st tes, in bis deposition, that he saw the Defendant at his father’s, and he told him In
 
 w
 
 s on his way to flop-
 
 ton Coot’s,
 
 to get him to write a deed of gift, ami that he is tended to give all his property to Barden, the Plaintiff. He says further, that he and the family remonstrated with the Plaintiff against the irnpropruty of giving all to one child. He persisted in his determination to do so. and said, if
 
 Hopton Coor
 
 would not write it for him, he would get some other pri son to do it. He would not return until he had accomplished it. This happened two or three days before the delivery of the deed of gift.
 
 Calvin (oor
 
 says, in his deposition, that the Defendant iveñi to the house of
 
 Mopion Coor,
 
 about the 20th of Fe*
 
 *458
 
 bruary, I8£l; that he appeared to be in his senses ; that be wrote a deed of gift for him; that he signed it, andl that lie and
 
 Hopton Coor
 
 attested it as witnesses ; that by the deed of gift, he conveyed all the land that lie liad in possession, and six negroes, by the names of Dorcas,
 
 Hardy, Britton, Zeny
 
 and
 
 Jonas’,
 
 that the name of the. other negro lie does not recollect; that the deed was read over to the Defendant; that he expressed his satisfaction witb'it; that it was delivered to
 
 Barden Tolar,
 
 the Plaintiff; that he told the Plaintiff to go and have it recorded
 
 ;
 
 but that in consequence of something
 
 Hopton Coor
 
 said, the Defendant observed, it would be time enough to have it recorded after his death, and told Plaintiff to let
 
 Hop-ton Coor
 
 keep it, upon which the Plaintiff delivered it to
 
 Hopton
 
 Coor. In the most important facts stated by this witness, he is supported and corroborated by the testimony' of
 
 Dorcas
 
 Coor.
 
 Jlrthur Jones
 
 states, that in a short time afterwards, he saw the Defendant, and was told by him that he had executed the deed of gift, and that it was left with
 
 Hopton Coor.
 

 At this stage of the inquiry, it may be assumed, that title to the property contained in the deed of gift became vested in the Plaintiff. For although it had been placed in the possession of
 
 Hopton Coor,
 
 it had been previously delivered to the Plaintiff, and his placing it there was his own act. The title to the property had previously passed
 
 to
 
 him. That, act was not obligatory upon him. He might have had it recorded when he pleased. Several depositions have been read to prove, that the Defendant, on several occasions, declared that he had conveyed all his property to the Plaintiff, excepting perhaps his hogs, chickens, &c. and that he had no right to" exercise acts of ownership over it. Other depositions have been read, to prove that he did, on various occasions, exercise acts of ownership over'it, arid treated it as his own. These circumstances relative to rhe management of the estate, prove nothing on either side, t was natural? when fa-
 
 *459
 
 ¿her and son lived together, that each of them should occasionally use the property, and treat it as if it was his own.
 

 It does not appear, that after the Defendant had regained possession of ttie deed of gift, and destroyed it, which was a few days after he executed it, that, the possession of the. property was in any respect changed, until toe Plaintiff left his father’s, and went to live by himself. Until then, the possession accompanied the title, whether it was in the father or in the sen. After their separation, it does not appear that the father had such an adverse possession of either the land or negroes, as would give him a title under the statute of limitations.
 

 Depositions have been read to prove, that the Plaintiff himself did not consider that he had a right to the land or negroes. Some of the depositions say, that the Plaintiff was an ignorant man. Pei haps he might have thought, that his title was divested by the destruction of the deed of gift. If such was the case, his misconception of his rights should not injure him. It is admitted by the Defendant, in his answer, that some days after the execution of the deed of gift by him, he went to
 
 Hopton Goar’s,
 
 house and applied for it; that
 
 Boreas Coot
 
 delhered it to him, and lie destroyed it.
 

 • From an examination of the whole case, I am of opinion, that the Defendant be decreed to convey to the Plaintiff, ail the land that he was possessed of at the date of the deed of gift
 
 •,
 
 and that the Master ascertain the identity of it: That he also convey to him the six ne-groes, with their increase since the date of the deed off gift: That he ascertain the name of the sixth negro, not recollected by
 
 Galvin Goor ;
 
 and that this conveyance be made by such a deed as the Master shall approve,, without warranty.
 

 Per Curiam.
 

 — Decree accordingly.